**No. 26-116**

United States Court of Appeals
for the Federal Circuit

In re Tesla, Inc.,
*Petitioner.*

On Petition for a Writ of Mandamus to the United States Patent and Trademark Office in IPR2025-00943, -00944, -01034, -01035

# BRIEF OF US*MADE, THE NATIONAL RETAIL FEDERATION, THE ALLIANCE FOR AUTOMOTIVE INNOVATION, THE HIGH TECH INVENTORS ALLIANCE, THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, ACT|THE APP ASSOCIATION, AND THE SOFTWARE & INFORMATION INDUSTRY ASSOCIATION IN SUPPORT OF TESLA AND THE PETITION FOR RELIEF

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

December 8, 2025

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

7. The full names of the parties that I represent are the US Manufacturers Association for Development and Enterprise, the National Retail Federation, the Alliance for Automotive Innovaiton, the High Tech Inventors Alliance, the Computer & Communications Industry Association, ACT|The App Association, and the Software & Information Industry Association

8. There are no real parties in interest of parties that I represent

9. There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent

10. No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court

11. I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

12. No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

December 8, 2025 *<u>/s/ Joseph Matal</u>*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................ **II**

**INTEREST OF AMICI CURIAE** ................................................ **V**

**ARGUMENT** .................................................................... **1**

**I. PTAB institution is not 'entirely discretionary'—it is regulated by the USPTO's authorizing statute** .................... **1**

**II. The USPTO's summary denial of PTAB petitions without explanation is illegal.** .................................................. **10**

**III. The new policy of having political appointees making initial institution decisions violates the agency's regulations.** ... **15**

**CONCLUSION** ................................................................ **19**

# TABLE OF AUTHORITIES

***Cases***

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) .................... 9

*Butz v. Economou*, 438 U.S. 478 (1978) .................................... 17

*Castaneira v. Noem*, 138 F.4th 540 (D.C Cir. 2025) .................... 16

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .............................................................................. passim

*Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138 (10th Cir. 2019) .................................................................. 14

*Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028 (D.C. Cir. 2022) .............................................................................. 11

*Deep v. Barr*, 967 F.3d 498 (5th Cir. 2020) .................................. 11

*DynCorp International, LLC v. United States*, 10 F.4th 1300 (Fed. Cir. 2021) ............................................................................ 16

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ............... 16

*Fort Stewart Schs. v. Federal Labor Rels. Auth.*, 495 U.S. 641 (1990) .............................................................................. 16

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................ 8

*Immigrant Def. Law Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025) .... 11

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .................................... 1, 4, 7

*Logic Tech. Dev. LLC v. FDA*, 84 F.4th 537 (3d Cir. 2023) .............. 11

*Louisville Gas & Elec. Co. v. Fed. Energy Regul. Comm'n*, 988 F.3d 841 (6th Cir. 2021) ......................................................... 11

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983) ................................................ 10

*Multicultural Media, Telecom and Internet Council v. FCC*, 873 F.3d 932 (D.C. Cir. 2017) ..... 12

*Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634 (D.C. Cir. 2020) ..... 11, 12

*Prairie Band Potawatomi Nation v. Yellen*, 63 F.4th 42 (D.C. Cir. 2022) ..... 13

*Thryv, Inc. v. Click-to-Call Techs., LP*, 590 U.S. 45 (2020) ..... 3, 6

*United Airlines, Inc. v. TSA*, 20 F.4th 57 (D.C. Cir. 2021) ..... 14

*United States v. Nixon*, 418 U.S. 683 (1974) ..... 16

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ..... 9

*Xia v. Scott*, 129 F.4th 1084 (8th Cir. 2025) ..... 11

*Zelaya Diaz v. Rosen*, 986 F.3d 687 (7th Cir. 2021) ..... 16

***Statutes and Regulations***

35 U.S.C. § 314 ..... 3

35 U.S.C. § 314(a) ..... 2

35 U.S.C. § 314(d) ..... 6

35 U.S.C. § 315(a) ..... 2

35 U.S.C. § 315(b) ..... 2

35 U.S.C. § 315(e) ..... 2

35 U.S.C. § 325(d) ..... 2

37 C.F.R. § 42.108 ..... 15

***Other Authorities***

Director Institution of AIA Trial Proceedings, October 17, 2025 ..... 10

Paul R. Gugliuzza, Our ______ Patent System (August 20, 2025), University of Texas Law, Legal Studies Research Paper ..... 6, 17

Rules Governing Pre-Issuance Internal Circulation and Review of Decisions Within the Patent Trial and Appeal Board, 89 Fed. Reg. 49808 (Jun. 12, 2024) ............................................................15

USPTO Brief in *Apple Inc. v. Squires*, No. 24-1864 ......................... 8

USPTO Brief in *In re Cambridge Indus.*, No. 26-101 ....................7, 9

USPTO Brief in *In re Sandisk Techs.*, No. 25-152 .......................... 1

## INTEREST OF AMICI CURIAE

The U.S. Manufacturers Association for Development and Enterprise is a nonprofit association representing companies manufacturing diverse goods in the United States.

The National Retail Federation is the world's largest retail trade association.

The Alliance for Automotive Innovation represents the full automotive industry, including the manufacturers producing most vehicles sold in the U.S. and equipment suppliers.

The High Tech Inventors Alliance represents leading technology providers and includes some of the most innovative companies in the world.

The Computer & Communications Industry Association is an international, not-for-profit trade association representing a broad cross section of communications and technology firms.

ACT | The App Association is a global policy trade association that represents entrepreneurs, innovators, and independent developers within the app ecosystem that engages with verticals across every industry.

The Software & Information Industry Association is the principal trade association for the software and digital information industries.[1]

[1] No counsel for any party wrote any part of this brief. No party other than amici curiae's members contributed money that was intended to fund the preparation or submission of this brief. This brief is accompanied by a motion seeking leave to file.

## ARGUMENT

### I. PTAB institution is not 'entirely discretionary'—it is regulated by the USPTO's authorizing statute.

The USPTO contends that PTAB petitioners "have no entitlement to . . . any particular set of criteria the agency might use to [decide] . . . institution"—that the matter is "entirely within the Director's discretion." USPTO Brief in *In re Sandisk Techs.*, No. 25-152, at 3. The agency suggests that PTAB institution has been entirely "committed to discretion" by the statute itself. *Id.* at 17 n. 3.

The Supreme Court has held that when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted), "the statute can be taken to have committed the decisionmaking to agency's judgement *absolutely*." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (emphasis added, citations omitted). The Court has also identified "certain categories of administrative decisions that courts traditionally have regarded as [being] committed to agency discretion" and therefore unreviewable. *Id.*

The USPTO's decision whether to initiate a validity review of a patent under the America Invents Act is not remotely analogous to these types of decisions.

***1.*** Unlike statutes that provide "no meaningful standard" for regulating agency discretion, *Lincoln v Vigil*, 508 U.S. at 191, the AIA expressly and extensively dictates the conditions for instituting PTAB review. The statute sets an elevated "reasonable likelihood" threshold for institution, *see* 35 U.S.C. § 314(a); sets time limits and other procedural bars in relation to district court litigation, *see id.* § 315(a), (b); estops repeated challenges to a patent by a party, *see id.* § 315(e); allows the agency to bar challenges based on prior art or arguments that it previously considered, *see id.* § 325(d); and extends these procedural bars to real parties in interest and parties in privity with the petitioner. *See id.* § 315(a), (b), and (e).

This is not a statute that provides "no law to apply"—or that evinces a legislative intent to make institution solely a matter of the Director's whim. The only logical conclusion to be drawn from Congress's enactment of the AIA's statutory institution requirements is that Congress intended for the agency to follow those requirements.

The fact that the merits thresholds at 35 U.S.C. §§ 314(a) and 324(a) are stated in the negative simply reflects the fact that other statutory conditions may require denial of institution. *See id.* at 26; *see also Thryv, Inc. v. Click-to-Call Techs., LP*, 590 U.S. 45, 57 (2020) ("[E]very decision to institute is made 'under' § 314 but must take account of specifications in other provisions.").

Nothing in the American Invents Act or its legislative history suggests that the AIA's statutory framework and conditions for institution of review are intended to be optional or merely advisory. Indeed, § 314—"the section housing the command to the Director to 'determine whether to institute,'" *Thryv*, 590 U.S. at 57—does not even use the word "discretion."

It bears comparing the AIA's statutory framework to the types of statutes that the Supreme Court has determined *do* commit a matter entirely to an agency's discretion. The Court has held that when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted), "the statute can be taken to have committed the decisionmaking to agency's judgement *absolutely*." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (emphasis added, citations omitted).

The statute at issue in *Lincoln v. Vigil* is illustrative. The plaintiffs in that case sought judicial review of the Indian Health Service's decision to reallocate resources from a regional health center to a nationwide program. The relevant statute authorized the Service to "'expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians,' for the "relief of distress and conservation of health."' *Lincoln v. Vigil*, 508 U.S. at 185 (quoting 25 U.S.C. § 13). Congress appropriated a lump sum for the Service; the appropriation made no mention of any regional center. *See id.* at 187. The Supreme Court concluded that the Service's resource-reallocation decision was unreviewable. It held that when "Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions." *Id.* at 192 (citations omitted).

By contrast, although *Citizens to Preserve Overton Park* also involved an appropriation, the Supreme Court there concluded that the statute did *not* commit all decisions "to agency discretion by law." 401 U.S. at 410. The act in question barred the use of funds to build a highway through public parkland, unless "there is no feasible and prudent alternative to the use of such land." *Id.* at 411 (quoting 23

U.S.C. § 138). The Transportation Department argued that it necessarily had "wide discretion"—that the statute required a "wide-ranging balancing of competing interests," and the Secretary must "determine on the basis of the importance that he attaches to [various] factors whether, on balance, alternative feasible routes would be 'prudent.'" *Id.* The Supreme Court disagreed. It held that "[p]lainly, there is 'law to apply' and thus the exemption for action 'committed to agency discretion' is inapplicable." *Id.* at 413. The Court concluded that it was thus "required to determine whether the Secretary acted within the scope of his authority." *Id.* at 415.

Again, Congress enacted a detailed, reticulated scheme for PTAB trials and institution. This statutory framework is considerably more detailed than the statute at issue in *Citizens to Preserve Overton Park*, and it does not even employ vague and discretionary words such as "prudent." The AIA is not a statute that provides "no law to apply."

As one academic commentator recently concluded, the USPTO's discretion with regard to PTAB institution operates *within* the agency's authorizing statute—it is not a power to *negate* the statute:

> [T]o equate discretion with an unreviewable power to deny review for any reason—or for no reason at all—is a stretch. For one, the AIA itself indicates that the Director's

> discretion is in applying the statute, not in nullifying it. For another, even if the AIA were completely silent about the scope any discretion the Director might possess, the Supreme Court has made clear that "in a system of laws discretion is rarely without limits" and that those limits should be inferred from "'the large objectives'" of the relevant statute. Surely the objective of the AIA was not to allow the Director to effectively repeal that very statute.[2]

Thus while § 314(d)—the appeal bar—precludes review of "an ordinary dispute about the application of an institution-related statute," *Thryv*, 590 U.S. at 54, there is no reason for this Court to extend non-reviewability beyond § 314(d)'s reach and such "ordinary disputes."

Nor can § 314(d) be interpreted to authorize a wholesale rewriting of the rest of the statute. Indeed, the notion that a detailed statutory scheme governing agency action is nevertheless entirely optional and can be modified at will by the agency is wholly alien to administrative law. Amici are unaware of any decision in the U.S. Reports that has ever interpreted a comparable statutory scheme to be merely advisory and discretionary. Precedents such as *Citizens to Preserve Overton Park*, 401 U.S. 402, are to the contrary.

---

[2] Paul R. Gugliuzza, Our ______ Patent System (August 20, 2025), University of Texas Law, Legal Studies Research Paper, at 60-61, available at https://ssrn.com/abstract=5399385

***2.*** Nor is the PTAB's decision to conduct a validity review analogous to the types of administrative decisions that the Supreme Court has identified as inherently or structurally unreviewable and thus entirely discretionary. These types of decisions include: (1) "an agency's decision not to enforce" a regulation or initiate a prosecution; (2) "an agency's refusal to grant reconsideration of an action because of material error;" (3) the decision "to terminate an [intelligence] employee in the interests of national security;" and (4) "[t]he allocation of funds from a lump-sum appropriation." *Lincoln v. Vigil*, 508 U.S. at 191-92.

The USPTO contends that PTAB institution is equivalent to an agency's decision not to enforce a civil or criminal statute. *See* USPTO Brief in *In re Cambridge Indus.*, No. 26-101, at 28 (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also* USPTO Brief in *Apple Inc. v. Squires*, No. 24-1864, at 25 (comparing discretionary denial of PTAB institution to "the Attorney General['s] [decision] to issue guidelines instructing Department of Justice officials to prioritize prosecution of violent crimes").

But PTAB proceedings are not enforcement proceedings in which the agency investigates and prepares its case. They are adjudicative proceedings in which the *petitioner* develops the

evidence and brings the case to the agency—the PTAB simply decides whether the petitioner has met its burden of proof. Broad discretion is necessary for *investigative* proceedings because an agency typically cannot investigate and bring proceedings in every potential case. *See Heckler v. Chaney*, 470 U.S. at 83 (enforcement discretion is unreviewable because "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing").

In the case of PTAB proceedings, by contrast, there is no question that the USPTO *can* address the merits of every PTAB petition that is presented to it—it *did* address the merits of almost every petition before the agency's recent enthusiasm for "discretionary denials." There is no enforcement-discretion justification for exempting PTAB institution decisions from this Court's review.

Nor is the USPTO correct in suggesting that PTAB institution is analogous to a decision to grant rehearing or to grant a new trial. *See* USPTO Brief in *In re Cambridge Indus.*, No. 26-101 at 18 n. 3 (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)). As *Allied Chemical* itself notes, new-trial rulings are not reviewable on mandamus because "[a] litigant is free to seek review of the

propriety of such an order on direct appeal after a final judgment," 449 U.S. at 36—which is not the case for PTAB institution decisions.

In addition, as the precedent cited by *Allied Chemical* notes, even a federal judge's decision to defer or stay a case may be reviewable on mandamus "[w]here a district court obstinately refuses to adjudicate a matter properly before it." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978).

## II. The USPTO's summary denial of PTAB petitions without explanation is illegal.

Contemplating the possibility that this Court may issue relief with respect to the USPTO's new institution policies, agency officials had hinted that they "could just issue one-word decisions denying review without explanation."[3] And in a recent rule adopted by memo, the new Director has implemented this approach: he has indicated that he will personally decide whether to institute each of the 1,200 to 1,700 PTAB petitions that are filed each year, and if he "determines that institution is not appropriate, whether based on discretionary considerations, the merits, or other non-discretionary considerations, the Director will issue a summary notice denying institution."[4] Since then, the USPTO has summarily denied 90 PTAB petitions.

This procedure is plainly illegal. The Supreme court has "frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S.

---

[3] Ryan Davis, "Stewart Says New Policies Seek Fairness for Patent Owners," Law360, Sep. 15, 2025.

[4] Director Institution of AIA Trial Proceedings, October 17, 2025, available at https://tinyurl.com/yvk64tut.

29, 48 (1983). Applying this rule, the regional U.S. Courts of Appeals have consistently required a reasoned explanation for all agency decisions. They have emphasized that "[i]t is axiomatic that the APA requires an agency to explain its basis for a decision." *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 644 (D.C. Cir. 2020). "When an agency acts, it must examine the relevant data and articulate a satisfactory explanation for its action." *Logic Tech. Dev. LLC v. FDA*, 84 F.4th 537, 549 (3d Cir. 2023). "If it does not, the agency has failed to engage in reasoned decisionmaking, and the APA requires the agency action be set aside." *Id.* (citations omitted).[5]

---

[5] *See also Deep v. Barr*, 967 F.3d 498, 503 (5th Cir. 2020) ("[A]n agency is not required to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."); *Louisville Gas & Elec. Co. v. Fed. Energy Regul. Comm'n*, 988 F.3d 841, 846 (6th Cir. 2021) ("[I]n all cases agencies must engage in reasoned decisionmaking. They must . . . articulate a satisfactory explanation for their action.") (citations omitted); *Xia v. Scott*, 129 F.4th 1084, 1087 (8th Cir. 2025) ("An agency decision is arbitrary and capricious if it . . . provides no meaningful explanation for its conclusions."); *Immigrant Def. Law Ctr. v. Noem*, 145 F.4th 972, 992 (9th Cir. 2025) ("[T]he agency must examine relevant data and articulate a satisfactory explanation for its action."); *Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028, 1055 (D.C. Cir. 2022) ("[W]hen an agency fails to provide an intelligible explanation for its decision, it has failed to engage in reasoned decisionmaking and we remand for further explanation.") (citations omitted).

Notably, the requirement for an agency to explain its actions applies even when the underlying decision is discretionary. In *Physicians for Social Responsibility*, for example, the D.C. Circuit reviewed an EPA directive that barred the recipients of EPA grants from serving on EPA advisory committees. *See* 956 F.3d at 638. The Court noted that the relevant regulations provided that advisory committee members "serve at the pleasure of the [agency]" and that their "membership terms are at the sole discretion of the agency." *Id.* at 640 (quoting 41 C.F.R. § 102-3.130(a)). The district court had dismissed the action on the basis that the agency's decision "was committed to agency discretion by law." *Id.* at 641.

The Court of Appeals reversed. Rejecting the notion that there was 'no law to apply,' it emphasized that it had found a basis for judicial review in "far more permissive and indeterminate language"—such a statute that provided that an agency "may excuse a failure to file if it finds it to be in the interests of justice." *Id.* at 643 (discussing *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1398 (D.C. Cir. 1995)). The D.C. Circuit reviewed the EPA's decision and found that the agency had failed to "articulate a satisfactory explanation for its action." *Id.* at 644 (quoting *State Farm*, 463 U.S. at 43).

Similarly, *Multicultural Media, Telecom and Internet Council v. FCC*, 873 F.3d 932 (D.C. Cir. 2017), reviewed a challenge to the FCC's decision to gather more information before issuing a regulation requiring broadcasters to issue emergency alerts in multiple languages. *See id.* at 935. Despite its conclusion that "the FCC has discretion" as to whether to require broadcasters to translate emergency messages, *id.*, the Court of Appeals nevertheless held that "the agency's exercise of discretion must be . . . reasonably explained." *Id.* at 937.

Even a decision as to how to spend a lump-sum appropriation—one of the types of inherently unreviewable decisions, *see Lincoln v. Vigil*, 508 U.S. 182, 191-2 (1993)—is nevertheless required to be reasonably explained. *Prairie Band Potawatomi Nation v. Yellen*, 63 F.4th 42 (D.C. Cir. 2022), heard a challenge to the distribution of COVID relief funds to Indian tribes. *See id.* at 44. The agency proposed additional allocations from available funds to tribes that had been undercounted in the previous year. *See id.* at 44. A tribe challenged how the undercount was calculated, noting that it received less money per capita than another tribe. *See id.* at 45, 46.

The D.C. Circuit held that even when agencies have "wide discretion," they still "must cogently explain why discretion was

exercised in a given manner." *Id.* at 46 (quoting *State Farm*, 463 U.S. at 48). It reversed and remanded the Treasury Department's allocation, holding that "[a]bsent further explanation," the agency's distribution of funds "treats similar situations in dissimilar ways contrary to the principles of reasoned decisionmaking." *Id.* at 47 (quoting *Garrett v. FCC*, 513 F.2d 1056, 1060 (D.C. Cir. 1975)).[6]

Under the USPTO's new policy of refusing to explain institution decisions, it will be impossible to determine if an institution decision treats "similar situations in dissimilar ways," *Prairie Band*, 64 F.4th at 47, was entirely arbitrary, or was influenced by an improper motive. Even constitutional limits are unenforceable if the USPTO is not required to give a reason for its decisions. This Court should enforce the rule that is applied in every other U.S. Court of Appeals and require the USPTO to explain its institution decisions.

---

[6] *See also United Airlines, Inc. v. TSA*, 20 F.4th 57, 63-64 (D.C. Cir. 2021) (requiring explanation of a discretionary decision); *New Mexico Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1167 (10th Cir. 2019) ("The APA's requirement that an agency explain its decision applies when the agency exercises its discretion.").

## III. The new policy of having political appointees making initial institution decisions violates the agency's regulations.

The USPTO has long had regulations in place that delegate at least the initial institution decision to a PTAB panel. *See* 37 C.F.R. § 42.108. In addition, in 2024, the USPTO promulgated regulations that prohibit agency political appointees and supervisory officials from interfering in PTAB adjudications that are pending before a panel.[7] These regulations were adopted in response to a Government Accountability Office investigation and report that found that USPTO officials had broadly interfered in PTAB decisionmaking in AIA cases, particularly with respect to institution decisions.[8] The report described a Star Chamber-like process in which administrative judges' decisions were rewritten without their consent and without their even knowing who had rewritten them.[9]

Under these regulations, the Director can still make the ultimate decision as to institution or final merits of a PTAB

---

[7] *See* Rules Governing Pre-Issuance Internal Circulation and Review of Decisions Within the Patent Trial and Appeal Board, 89 Fed. Reg. 49808 (Jun. 12, 2024).

[8] *See* United States Government Accountability Office, Patent Trial and Appeal Board: Preliminary Observations on Oversight of Judicial Decision-Making, July 21, 2022, available at https://www.gao.gov/assets/gao-22-106121.pdf.

[9] *See id.* at 18.

proceeding, but only after the case has initially been decided by a panel.

The USPTO's new process in which political appointees make initial institution decisions—adopted without any change to these regulations—is illegal. "It is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs. v. Federal Labor Rels. Auth.*, 495 U.S. 641, 654 (1990); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not . . . depart from a prior policy sub silentio or simply disregard rules that are still on the books."). "So long as [a] regulation is extant it has the force of law." *United States v. Nixon*, 418 U.S. 683, 695 (1974); *see also DynCorp International, LLC v. United States*, 10 F.4th 1300, 1311 (Fed. Cir. 2021) ("Naturally, an agency has no discretion to disregard binding regulations.").

Agencies are obligated to follow their own regulations even when those regulations govern actions that are "discretionary:"

> Even where Congress has accorded an agency broad discretion, if the agency itself chooses to bind itself to published procedures, this choice means that it must then exercise its own discretion in accordance with its own existing valid regulations and binding precedents.

*Castaneira v. Noem*, 138 F.4th 540, 551 (D.C Cir. 2025) (citations omitted); *see also Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir.

2021) ("[F]ederal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion.").

The USPTO's regulations assigning initial institution decisions to regular PTAB panels and insulating those decisions from political interference also protect important constitutional values. PTAB trial decisions are not ordinary agency actions—they are *adjudicative* decisions that address valuable property rights. Both patent owners and petitioners often have much at stake in these proceedings.

The Supreme Court has made clear its expectation that such administrative adjudications will be "structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Butz v. Economou*, 438 U.S. 478, 513 (1978).[10] The Court also has placed emphasis on the Administrative Procedure Act's guarantee that agency judges are "assigned to cases in rotation so far as is practicable." *Id.* at 514. Adherence to the

[10] *See also* Gugliuzza, *supra* n. 2 ("Consolidating in a single person power over patents worth millions of dollars also raises the risk that that power will be exercised in the Director's own self-interest, not the public's interest.").

existing regulations would protect these rights—while also creating a clear administrative record that would allow the parties and the Court to determine whether the USPTO's actions are lawful.

## CONCLUSION

The petition for relief should be granted.

Respectfully submitted,

/s/ *Joseph Matal*

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

Dated: December 8, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(3) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(5) and Federal Circuit Rule 21(e) because it contains 3,732 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); and

(4) complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared using Microsoft Office Word and is set in the Bookman Old Style font in a size equivalent to 14 points or larger.

Dated: December 8, 2025 /s/ *Joseph Matal*