2026-116

---

**UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

---

**IN RE TESLA, INC.,**
*Petitioner*.

---

Petition for a Writ of Mandamus to the
Director of the United States Patent and Trademark Office,
Patent Trial and Appeal Board Nos. IPR2025-00943, IPR2025-00944,
IPR2025-01034, and IPR2025-01035

---

# ***AMICUS CURIAE* BRIEF OF TEODOR HOLMBERG IN SUPPORT OF TESLA, INC.'S PETITION FOR A WRIT OF MANDAMUS**

---

Teodor J. Holmberg
8 Gregory Lane
Florence, MA 01062
(401) 225-4538

*Amicus Curiae*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-116

**Short Case Caption** In re Tesla, Inc.

**Filing Party/Entity** Teodor Holmberg/movant (amicus curiae)

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/31/2025 Signature: /s/ Teodor Holmberg

Name: Teodor Holmberg

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Teodor Holmberg | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


Table of Authorities ........ iii

Identity of *Amicus Curiae* ........ v

Table of Abbreviations ........ vi

Argument ........ 1

**I.** SUMMARY/INTRODUCTION ........ 1

**II.** BACKGROUND ........ 5

A. §314(d) shields *only* the §314(a) "threshold" determination from judicial review ........ 5

(1) This court's *en banc Wi Fi One* decision ........ 5

(2) The Supreme Court's *SAS Institute* agrees with *Wi Fi One* ........ 7

(3) *Thryv* overturns *Wi Fi One* (and *SAS Institute* in all but name) ........ 8

(4) *Apple v. Vidal* follows *Thryv* ........ 12

B. §314(a) is the "threshold" determination—the *sine qua non*—that *must* be made regarding every IPR petition ........ 14

(1) The IPR fees prove the *sine qua non* interpretation. ........ 15

(2) The *sine qua non* interpretation fulfills IPR's statutory intent. ........ 17

C. The PTO only has the discretion to consider *PTO* proceedings when denying an IPR petition ........ 19

D. The 3/26/25 DD Memo creates new "DD" bifurcated procedure ........ 23

E. Tesla's IPR petitions "discretionarily denied" under the 3/26/25 DD Memo ........ 24

**III.** MANDAMUS SHOULD BE GRANTED ........ 26

A. Tesla has a "clear and undisputable right" to the vacatur of the 3/26/25 DD Memo for (i) not requiring §314(a)'s "threshold" determination and (ii) enabling denials based on *non*-PTO considerations ........ 26

B. The Federal Circuit's own precedential Catch-22 prevents Tesla from obtaining relief elsewhere. ........ 27

C. Mandamus is appropriate considering, *inter alia*, … ................................28
(1) … this court has recognized the need to re-visit the PTO's IPR regulations under the new *Loper Bright* lack of deference standard ....................................................28
(2) …Tesla paid $95,000 in non-refundable fees for a claim-by-claim §314(a) "threshold" determination of 4 IPR petitions ......................................................29
**IV.** PROPOSED/POSSIBLE ISSUES TO RESOLVE ....................................30
A. Is the judicial expansion of §314(d)'s shield to cover anything the PTO does regarding IPR institution decisions still supportable under the new *Loper Bright* lack of deference standard? ................................................30
B. Under *Loper Bright*, should §314(d)'s scope be limited to the §314(a) "threshold" determination, *a la* this court's *en banc Wi Fi One* decision (which was overturned under the old *Chevron* deference standard)? ........30
C. Is the PTO required to make a claim-by-claim §314(a) "threshold" determination regarding each IPR petition? ..............................................30
D. Under *Loper Bright*, does the PTO have the statutory authority to make its own rules for denying IPR petitions based on *non*-PTO proceedings?......30
E. Considering (A)-(D), should the 3/26/25 DD Memo be set aside as "not in accordance with law" under §706(2)(A) and/or "in excess of statutory … authority" under §706(2)(C)? ....................................................................30
Conclusion......................................................................................................31
Certificate of Compliance with Type-Volume Limits ............................................32

# TABLE OF AUTHORITIES

## Cases

*Apple v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023)....................passim
*Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*,
467 U. S. 837 (1984). ....................1
*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) ....................3, 7, 12, 17
*In re DBC*,
545 F. 3d 1373 (Fed. Cir. 2008)....................26
*In re Motorola Solutions, Inc.*,
__ F. 4th __, 2025 WL 3096514 (Fed. Cir. Nov. 6, 2025). ....................4
*In re Power Integrations, Inc.*,
899 F.3d 1316 (Fed. Cir. 2022)....................3
*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ....................passim
*Mallard v. U. S. Dist. Court for S. Dist. of Iowa*,
490 U.S. 296 (1989) ....................4, 27
*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica*, *N.V.*,
989 F.3d 1375 (Fed. Cir. 2021)....................3, 4, 28
*Thyrv, Inc. v. Click-to-call Techs.*,
590 U.S. 45 (2020) ....................passim
*United States v. Arthrex, Inc.*,
141 S.Ct. 1970 (2021) ....................12
*Wi Fi One, LLC v. Broadcom Corp.*,
878 F. 3d 1364 (2018) (*en banc*) ....................1, 5, 6

## Federal Register

7 Fed. Reg. 55028 (Sept. 6, 2012)....................16
77 Fed. Reg. 6868 (Feb. 9, 2012)....................22
77 Fed. Reg. 6879 (Feb. 10, 2012)....................16
78 Fed. Reg. 4212 (Jan. 18, 2013)....................16
89 Fed. Reg. 91898 (Nov. 20, 2024) ....................15

## Statutes

35 U.S.C. §311(a) .......... 15, 29
35 U.S.C. §312(a) .......... 14
35 U.S.C. §312(b) .......... 18
35 U.S.C. §314(a) .......... passim
35 U.S.C. §314(c) .......... 18
35 U.S.C. §314(d) .......... passim
35 U.S.C. §315(a) .......... 13, 14, 21
35 U.S.C. §315(b) .......... passim
35 U.S.C. §315(d) .......... 2, 13, 20
35 U.S.C. §316(a)(1) .......... 19
35 U.S.C. §316(a)(2) .......... 19, 20, 29
35 U.S.C. §316(a)(4) .......... 19, 20, 21, 29
35 U.S.C. §316(a)(7) .......... 19
35 U.S.C. §316(a)(8) .......... 19
35 U.S.C. §318(a) .......... 7, 8
35 U.S.C. §325(d) .......... passim
5 U.S.C. §706 .......... 6
5 U.S.C. §706(2)(A) .......... 28
5 U.S.C. §706(2)(C) .......... 28

## Code of Federal Regulations (C.F.R.)

37 C.F.R. §42.108(a) .......... 7, 8
37 C.F.R. §42.4 .......... 24

## Other Authorities

157 Cong. Rec. 9778 (2011) .......... 17
H. R. Rep. No. 112-98 .......... 17, 21

## IDENTITY OF *AMICUS CURIAE*

Pursuant to Fed. R. App. P. 29(a)(4)(D), I hereby provide a concise statement of my identity, my interest in the case, and the source of my authority to file. I am a patent practitioner of over 25 years experience, a member of the patent bar (Reg. No. 50,140), a member of the Bars of Massachusetts and New York, and, of course, a member of the bar of the Federal Circuit Court of Appeals. I have been involved in patent litigation all over the United States and written over at least 200 patents. My interest here is for the rules: all of us have to follow them, including the PTO. As discussed in the brief, I believe the Supreme Court's *Loper Bright* decision[*] requires a re-evaluation of *Apple v. Vidal*'s[**] expansion of §314(d)'s preclusion of judicial review to cover all PTO instructions regarding IPR institution decisions. Of course, I have authority to file my own briefs.

Pursuant to Fed. R. App. P. 29(a)(4)(E), I hereby attest that: (i) I have authored this brief in whole; (ii) no party or party's counsel has contributed money that was intended to fund preparing/submitting this brief; and (iii) no other person besides myself has contributed money that was intended to fund preparing/submitting this brief.

---

* *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).
** *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023).

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| AIA | Leahy-Smith America Invents Act, Public Law 112-29, 125 Stat. §§284-341, enacted at various places in the U.S.C., most relevantly at 35 U.S.C. §§311-319, concerning IPRs |
| AIA trials | refers to the 3 forms of after-grant review established by the AIA: IPR, PGR, and CBM |
| APA | Administrative Procedures Act |
| Appx___ | Tesla's Appendix [ECF Docket Nos. 02-2 & 02-3], at page(s) ____ (using the APPX numbering) |
| DD | Discretionary Denial, a denial of IPR institution made by the Director in accordance with the 3/26/25 DD Memo and, after Oct. 17, 2025, both the 3/26/25 DD Memo and the 10/17/25 DD Memo |
| Director | Generally, whoever was Director or Acting Director of the PTO at the time (presently, Director John Squires) |
| IPR | Inter Partes Review |
| IPR institution | refers only to the initial review of the IPR petition to determine whether to grant it under 35 U.S.C. §314(a) (not to any of the proceedings once the IPR is instituted) |
| 3/26/25 DD Memo | March 26, 2025 Memorandum from Coke Morgan Stewart, Acting PTO Director, to all PTAB judges, entitled "Interim Processes for PTAB Workload Management," in the Appendix at Appx42-44. |
| 10/17/25 DD Memo | October 17, 2025 Memorandum from John Squires, PTO Director, to all PTAB judges, entitled "Director Institution of AIA Trial Proceedings," in the Appendix at Appx45-44. |
| PGR | Post-Grant Review, at 35 U.S.C. §§321-329 |
| PTAB | Patent Trial and Appeal Board |
| PTO | United States Patent & Trademark Office |

# **ARGUMENT**

## I. SUMMARY/INTRODUCTION

This petition should be granted because:

***First***, *Chevron*[1] deference is dead and this court's current deference to the PTO by shielding the Director's IPR institution instructions from judicial review is no longer supportable under the new *Loper Bright*[2] **lack of** deference. Under precedents taking a *Chevron* deferential approach, §314(d) has become a mighty fortress around the PTO, allowing the Director to do whatever he wants when denying IPR petitions. This court should re-visit those precedents under the *Loper Bright* lack of deference.

***Second***, the proper scope of §314(d)'s protection is limited to the §314(a) "threshold" determination, as this court found in its *en banc Wi Fi One* decision,[3] which was overturned by the pre-*Loper Bright* case *Thryv*.[4] I respectfully submit that *Thryv* and *Apple v. Vidal*,[5] the two cases that expanded §314(d)'s scope to cover

---

[1] *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).

[2] *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 411 (2024) ("*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

[3] *Wi Fi One, LLC v. Broadcom Corp*., 878 F.3d 1364, 1372 (2018) (*en banc*), overruled by *Thryv*.

[4] *Thyrv, Inc. v. Click-to-call Techs*., 590 U.S. 45 (2020).

[5] *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) *cert. denied*, *sub nom. Intel Corp. v. Vidal*, 144 S. Ct. 548 (2024).

practically everything, are no longer good law under the *Loper Bright* lack of deference.

***Third***, the proper interpretation of the IPR statutory framework is that the PTO ***must*** make the §314(a) "threshold" determination regarding every IPR petition. This *sine qua non* interpretation of the §314(a) "threshold" determination is the only interpretation that fulfills Congressional intent to "eliminate bad patents." This was also the PTO's own interpretation when the AIA passed, and the IPR fees still reflect this understanding.

***Fourth***, the PTO does not have the statutory authority to consider parallel court proceedings when denying an IPR petition. Congress's intent to limit the Director's discretion when denying IPR petitions to matters ***before the PTO*** is crystal-clear. For example, Congress specifically gave the Director the discretion to consider related PTO proceedings when denying an IPR petition in §§315(d) and 325(d). With no statutory authority, the Director has no discretion to consider parallel court proceedings when denying IPR petitions under the *Loper Bright* lack of deference.

***Fifth***, the 3/26/25 DD Memo[6] established rules/procedures under which an IPR petition may be denied (i) ***without*** making the required §314(a) "threshold" determination; and (ii) based on parallel court proceedings, the age of the patent, and

[6] March 26, 2025 Memorandum entitled "Interim Processes for PTAB Workload Management" (hereinafter, "the 3/26/25 DD Memo"). Appx42-44.

other matters Congress did not give the PTO the discretion to consider. Tesla's IPR petitions at issue here were denied under the rules/procedures set by the 3/26/25 DD Memo.

***Accordingly***, Tesla has a "clear and indisputable right"[7] to the vacatur of the 3/26/25 DD Memo under which Tesla's IPR petitions were denied, as the 3/26/25 DD Memo was an "action by the agency beyond its statutory limits"—one of the specific instances which may require mandamus review "in response to action by the agency relating to the non-institution of inter partes review."[8] This is **not** an attempt to "get around" §314(d)'s prohibition of judicial review, but rather is a petition for this court to ***command*** the PTO to ***vacate*** the 3/26/25 DD Memo for (i) not requiring the §314(a) "threshold" determination; and (ii) allowing the PTO to consider non-statutory matters in denying IPR petitions. While the §314(a) "threshold" determination may itself be unreviewable under §314(d), the PTO still has to make it in the first place.

[7] *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica*, *N.V.*, 989 F.3d 1375, 1378 (Fed. Cir. 2021), listing the 1st of 3 conditions for mandamus.

[8] *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2022), discussing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016).

Tesla "lack[s] adequate alternative means to obtain the relief"[9] because of a legal Catch-22. In *Motorola*,[10] this court did not grant mandamus because the IPR petitioners could seek APA relief in a federal district court; however, in *Apple v. Vidal*, this court held that §314(d) prohibits a federal district court from reviewing substantive instructions like the 3/26/25 DD Memo. Thus, Tesla is stuck in a Catch-22 from which no relief from the 3/26/25 DD Memo is possible.

Tesla must "convince the court that the writ is appropriate under the circumstances" as the third and final condition for mandamus.[11] Mandamus is appropriate because:

- this court has recognized the need to review the PTO's IPR rulemaking authority under *Loper Bright*; and
- Tesla paid $95,000 in non-refundable fees for a claim-by-claim §314(a) "threshold" determination in 4 IPR petitions, which were not made.

---

[9] *Mallard v. U. S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989), listing another of the 3 conditions for a writ of mandamus.

[10] *In re Motorola Solutions, Inc.*, __ F. 4th __ (Fed. Cir. 2025).

[11] *Mylan*, 989 F.3d at 1378.

## II. BACKGROUND

### A. §314(d) shields ***only*** the §314(a) "threshold" determination from judicial review

35 U.S.C. §314(d) states that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." Under the *Loper Bright* lack of deference, this statute should mean just what it says. As explained by this court in *Wi Fi One*, the "determination by the Director whether to institute an [IPR] under this section" refers to the §314(a) "threshold" determination as the only substantive determination in §314 ("this section"), and thus §314(d)'s protection is limited to §314(a)'s "threshold" determination.

#### (1) This court's *en banc Wi Fi One* decision

*Wi Fi One* started with a disagreement about whether the IPR petitioner was in privity with the defendants of a previous (recent) lawsuit on the same patent, which would mean that §315(b)barred the IPR petition.[12] The patent owner wanted to do discovery on the issue, which the PTO denied, and the IPR was instituted. After the IPR FWD, the patent owner appealed to this court, arguing that the PTO's

[12] *Wi Fi One*, 878 F. 3d at 1370.

§315(b) determination should be reversed or vacated. A previous Federal Circuit panel had found that §314(d) barred judicial review of the PTO's §315(b) decision.[13]

This court adopted an appropriately high bar for when to defer to the PTO: "In view of this strong presumption [for judicial review], we will abdicate judicial review ***only*** when Congress provides a "clear and convincing" indication that it intends to prohibit review."[14] Because there was "no clear and convincing indication in the specific statutory language in the AIA, the specific legislative history of the AIA, or the statutory scheme as a whole that demonstrates Congress's intent to bar judicial review of §315(b) time-bar determinations," this court did not allow §314(d) to block their review of the PTO's time-bar determination.

This is the *Loper Bright* approach: the "*courts* must 'decide all relevant questions of law.'"[15] This court continued:

> Starting with the statutory language, §314(d) provides that "[t]he determination by the Director whether to institute an inter partes review *under this section* shall be final and unappealable." (emphasis added). The natural reading of the statute limits the reach of §314(d) to the determination by the Director whether to institute IPR as set forth in §314 … [and more specifically to] … [s]ubsection (a) of §314—the only subsection addressing substantive issues that are part of the Director's determination "under this section" …[16]

---

[13] *Id.* at 1371.

[14] *Id.* at 1372 (emphasis added).

[15] *Loper Bright*, 630 U.S. at 390 (emphasis in original) (quoting 5 U.S.C. §706).

[16] *Wi Fi One*, 878 F. 3d at 1372.

The approach in *Wi Fi One* is the most appropriate under the *Loper Bright* lack of deference standard: §314(d)'s prohibition is limited to the §314(a) "threshold" determination.

**(2) The Supreme Court's *SAS Institute* agrees with *Wi Fi One***

*SAS Institute*[17] is a pre-*Loper Bright* Supreme Court case which provides a preview of how the Supreme Court might take a *Loper Bright* approach to the PTO's recent IPR institution rules. The PTO had promulgated 37 CFR §42.108(a) which allowed the PTO to institute an IPR on less than all of the claims challenged in the IPR petition—a so-called "partial institution." An unhappy IPR petitioner of a partial institution challenged §42.108(a) on statutory grounds, *i.e*., because §318(a) states that the PTO "shall issue a [FWD] with respect to ***any*** patent claim challenged by the petitioner …" (emphasis added) and, thus, all of the claims in the IPR petition must be reviewed.

The PTO argued that *Cuozzo*[18] and §314(d) prevented any "judicial review of any legal question bearing on the institution of inter partes review—including whether the statute permits [the PTO's] 'partial institution' practice."[19] The Court in

---

[17] *SAS Institute, Inc. v. Iancu*, 584 U.S. 357 (2018).

[18] *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016).

[19] *SAS Institute*, 584 U.S. at __ (slip op., p. 12).

*SAS Institute* brushed those concerns aside and effectively struck down §42.108(a) as an agency action beyond statutory authority, stating that "the plain text of §318(a) supplies a ready answer. … *any patent claim challenged by the petitioner* … means that the Board *must* address *every* claim the petitioner has challenged."[20] This is the *Loper Bright* approach: the courts decide what the law is, starting with the language of the statute, and without any deference to the agency's interpretation, even when there may be ambiguity.

In response to the PTO's argument that *Cuozzo* effectively expanded §314(d) beyond §314(a) to cover §315(b), the Court stated "*Cuozzo* concluded that §314(d) precludes judicial review **only** of the Director's 'initial determination' under §314(a) that 'there is a 'reasonable likelihood' that the claims are unpatentable on the grounds asserted'" and judicial "review is therefore justified."[21]

**(3) *Thryv* overturns *Wi Fi One* (and *SAS Institute* in all but name)**

Sometimes two precedents simply contradict each other, even though both cases are on point and one did not explicitly over-rule the other. *SAS Institute* and *Thryv* are an example of this, as noted by the dissent. *Thryv* expanded the reach of

[20] *Id.*, (slip op., pp. 4-5) (emphasis in the original).

[21] *Id.*, (emphasis added).

§314(d)'s prohibition beyond §314(a)'s "threshold" determination, thereby overturning *Wi Fi One*.[22] As explained below, the *Thryv* expansion is not likely to survive a second look under the *Loper Bright* lack of deference standard.

In *Thryv*, the patent owner had filed a lawsuit in 2001 against the IPR petitioner which was subsequently voluntarily dismissed without prejudice.[23] ***Twelve years later***, the IPR petition was filed, and the patent owner challenged the IPR petition on the basis of §315(b)'s 1-year time limit. The PTO decided §315(b) didn't apply to lawsuits which were dismissed without prejudice, and instituted the IPR proceeding, in which many of the patent claims were cancelled. The patent owner appealed, challenging the PTO's decision regarding §315(b)'s time limit.

A *Loper Bright* analysis[24] begins with the statute itself, *i.e.,* §315(b): "An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner … is served with a complaint alleging infringement of the patent." The wording of §315(b) is clear: if a patent infringement complaint was filed against a party, that party must file an IPR petition

---

[22] *Thyrv*, 590 U.S. at __ (slip op., p. 4).

[23] This is a simplification for convenience: the previous lawsuit had been brought by a licensee of the patent owner against a previous incarnation of 1 of 4 IPR petitioners.

[24] *Loper Bright*, 630 U.S. at 392 ("Under the APA, it thus remains the responsibility of the court to decide whether the law means what the agency says.") (punctuation omitted).

within a year or give up the right to file such a petition. The Director has no discretion besides simply ministerially applying §315(b).

By contrast, the Court in *Thryv* did not start with the wording of §315(b), but rather with an analysis of *Cuozzo*'s discussion of §314(d) and whether it required §314(d)'s expansion to cover §315(b).[25] In other words, the Supreme Court interpreted the wording of *Cuozzo*—not the wording of the statute itself—as requiring §314(d)'s prohibition be extended to decisions about §315(b): "We need not venture beyond *Cuozzo*'s holding that §314(d) bars review at least of matters 'closely tied to the application and interpretation of statures related to' the institution decision …, for a §315(b) challenge easily meets that measurement."[26] The Court rejected the idea that §314(d)'s scope was limited to the §314(a) "threshold determination.[27]

The dissent in *Thryv* noted the ruling contradicted *SAS Institute*.[28] In the dissent's view, *SAS Institute* ruled that §314(d) was limited to "the Director's initial

---

[25] *Thyrv*, 590 U.S. at __ (slip op., p. 6) (Ginsburg, J.).

[26] *Id.*, (slip op., p. 7) (Ginsburg, J.).

[27] *Id.*, (slip op., pp. 7, 8) (Ginsburg, J.). The Court argued that the phrase "under this section" in §314(d) referred to the entirety of Chapter 31. A better reading is that "under this section" means just §314 and, as pointed out in *Wi Fi One*, the only substantive determination in §314 is §314(a)'s "threshold" determination

[28] *Id.*, (slip op., dissent, Gorsuch, J., p. 16)

determination under §314(a)."[29] Accordingly, *stare decisis* demanded a different outcome (such as an explicit over-ruling of *SAS Institute*), but instead the "majority quibbles with a few sentences [about *SAS Institute*] and quietly walks away."[30] Because of this, future litigants and lower courts will be left with the question: "Whether [§314(d)] is limited to the §314(a) determination (as *SAS Institute* held and parts of *Cuozzo* suggested) or also reaches to challenges in 'closely related' statutes (as other parts of *Cuozzo* suggested and the Court insists today)—who can say?"[31]

Under the *Loper Bright* lack of deference, *Thyrv* is wrong and *Wi Fi One* and *SAS Institute* are right. In promulgating §315(b), Congress intended the PTO to deny an IPR petition filed more than a year after a complaint was filed. Congress did not intend to allow the PTO to interpret §315(b) into oblivion using the shield of §314(d). As the dissent in *Thryv* feared,[32] the PTO took what was intended to be a shield protecting the §314(a) "threshold" determination and has turned it into a sword for cutting down dozens of IPR petitions at a time.

---

[29] *Id*., (slip op., dissent, Gorsuch, J., p. 17)

[30] *Id*.,

[31] *Id*., (slip op., dissent, Gorsuch, J., pp. 17-18)

[32] *Id*., (slip op., dissent, Gorsuch, J., p. 18) ("The Court's expansive reading of §314(d) takes us further down the road of handing over judicial powers involving the disposition of individual rights to executive agency officials.").

### (4) *Apple v. Vidal* follows *Thryv*

*Apple v. Vidal* expanded *Thryv* so that any PTO instructions regarding IPR institution are protected from judicial review by §314(d).[33] Apple had challenged, under the APA, two precedential PTAB decisions which established a 6 factor test for considering parallel court proceedings when deciding whether to institute an IPR (*i.e.*, the *NHK-Fintiv* rules). This court recognized that Apple was not challenging the denial of a specific IPR petition, but rather "the Director's instructions to the Board, as delegatee, regarding how to exercise the Director's institution discretion."[34] After discussing *Cuozzo*, *SAS Institute*, *Thryv*,[35] and *Arthrex*,[36] this court found that any challenge to the content of such instructions was prohibited by §314(d): "we conclude the IPR statute's preclusion of review, as now settled by the Supreme Court based on statutory text, legislative history, and structure, must encompass preclusion of review of the content-focused challenges to the instructions at issue here."[37]

Under *Loper Bright* scrutiny, one problem with *Apple v. Vidal* is immediately apparent: what statute empowered the PTO to make its own IPR institution rules

---

[33] *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) (slip op., p. 17).

[34] *Id.*, (slip op., p. 17).

[35] *Apple v. Vidal* cites *Thryv* 14 times.

[36] *United States v. Arthrex, Inc.*, 141 S.Ct. 1970 (2021).

[37] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 7).

regarding parallel court proceedings?[38] Instead of finding any such grant of authority, this court found the PTO's power in the fact that Congress did ***not*** say otherwise: "Congress enacted no provision for this scenario that directs the court to stay its case in light of a pending request for IPR or an instituted IPR. Nor did Congress enact a provision prescribing how the Director is to address such an overlapping pending court case in exercising the discretion whether to institute an IPR."[39]

An argument for agency power from statutory silence will not survive scrutiny under *Loper Bright*.[40] Moreover, Congress was not silent: to the extent Congress wanted parallel court proceedings to affect the grant or denial of an IPR petition, Congress spelled it out in §§315(a) and (b). Since Congress explicitly gave the PTO the discretion to consider related ***PTO*** proceedings when denying an IPR petition in §§315(d) and §325(d),[41] the presumption from Congress's silence must be that

---

[38] *Loper Bright*, 630 U.S. at 406 ("At best our *Chevron* doctrine has been nothing more than a distraction from the question that matters: Does the Statute authorize the challenged agency action?").

[39] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 7).

[40] *Loper Bright*, 630 U.S. at 400 ("Of course, when faced with a statutory ambiguity in such a case, the ambiguity is ***not*** a delegation to anybody, …") (emphasis added).

[41] §325(d), last sentence: "In determining whether to institute or order a proceeding under … chapter 31 [*i.e.,* IPRs], the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office."

Congress did ***not*** intend the PTO to consider parallel court proceedings (besides ministerially applying §§315(a)/(b)). Under *Loper Bright*, Congress's silence ends the inquiry: the PTO has no discretion to consider parallel court proceedings when denying an IPR petition (besides ministerially applying §315(a)/(b)).

### B. §314(a) is the "threshold" determination—the *sine qua non*—that *must* be made regarding every IPR petition

I respectfully submit that the "threshold" determination of §314(a) was intended to be performed ***for every challenged claim*** in an IPR petition, unless (i) a statutory exception, like §§315(b), applied or a statutory requirement was not met, like §311(c)(1); or (iii) a challenge to a single claim was found reasonably likely to prevail, in which case the PTO can stop and decide whether to grant or deny.[42] Once performed, the Director has the discretion to grant or deny the IPR petition based either on the merits or on the considerations about which Congress expressly authorized the Director to exercise his discretion—*i.e.*, considering other related PTO proceedings under §§315(d) and 325(d) and/or PTO workload and the PTO's ability to timely complete any instituted IPR proceeding under §§316(a)(11) and (b).

[42] *SAS Institute*, 584 U.S. at __ (slip op., pp. 13-14) ("Once that single claim threshold is satisfied, it doesn't matter whether the petitioner is likely to prevail on any *additional* claims; the Director need not even consider any other claim before instituting review.").

### (1) The IPR fees prove the *sine qua non* interpretation

The IPR fees are statutorily required to ***match*** the costs to the PTO for performing the IPR,[43] unlike most other fees which the PTO can set to recover the costs of running the PTO as a whole. From the beginning, the PTO's IPR fees have been based on the estimated costs for the PTO to review every single challenged claim in the IPR petition ***in order to make the institution decision***—*i.e.*, ***separately*** from the estimated cost of the IPR proceeding.

The current up-front fee for filing an IPR petition is $51,875, consisting of a $23,750 ***non-refundable*** "request fee" (for the institution decision) and a $28,125 refundable "Post-Institution fee" (for the IPR proceedings, if any).[44] Each claim over 20 in the IPR petition requires (i) a $470 ***non-refundable*** fee for the decision to institute and (ii) a $940 refundable fee for the IPR proceedings, if any. For 2025, the IPR fees increased 25% in order "to better align the fee rates charged to petitioners with ***the actual costs borne*** by the USPTO in providing these proceedings."[45]

---

[43] §311(a) ("The Director shall establish, by regulation, fees to be paid by the person requesting the review, in such amounts as the Director determines to be reasonable, considering the aggregate costs ***of the review***." ) (emphasis added).

[44] 89 Fed. Reg. 91898 (Nov. 20, 2024), at 92011 (setting §42.15 fees for 2025).

[45] *Id.*, at 91936 (emphasis added). The PTO must publish any proposed fee changes with "the specific rationale and purpose for the proposal." AIA, §10(e)(1), 125 Stat. 317.

Because the PTO understood that the claim-by-claim §314(a) "threshold" determination **has to be made** as part of the institution decision, that portion of the fee has been **non-refundable** since the first IPR fees were promulgated in 2012.[46] By contrast, because the IPR might not be instituted, the portion of the fee for the IPR proceeding is refundable. Similarly, the fees/costs for an IPR were on a per-claim basis for each claim over 20, separately for the decision to institute (non-refundable) and for the IPR proceeding (refundable).

This only makes sense if a claim-by-claim §314(a) "threshold" determination must be performed—*i.e.*, it is the *sine qua non* of the institution decision. The fact that the fees have always been based on the costs of doing a claim-by-claim §314(a) "threshold" determination at the institution decision stage weighs heavily in favor of the *sine qua non* interpretation. As stated in *Loper Bright*, "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning."[47] There is no interpretation of the statutory framework and fee structure that could justify paying a non-refundable fee of $23,750 for the decision to institute if the Director can deny the IPR petition based on what he had for breakfast. And why is there a

[46] 77 Fed. Reg. 6879 (Feb. 10, 2012); 7 Fed. Reg. 55028 (Sept. 6, 2012) (NPRM), at 55040; 78 Fed. Reg. 4212 (Jan. 18, 2013) (Final Rule), at 4224.

[47] *Loper Bright*, 630 U.S. at 394.

non-refundable fee for each claim over 20 *for the institution decision alone* if the Director can make a DD without even looking at the claims?

**(2) The *sine qua non* interpretation fulfills IPR's statutory intent.**

The *raison d'etre* of IPR is to eliminate bad patents, not to take another look, not to perform a re-examination, it's for two parties to battle over the challenged patentability of a patent. 157 Cong. Rec. 9778 (2011) (comments of Rep. Goodlatte: the purpose of the IPR is "to screen[] out bad patents."); H. R. Rep. No. 112-98, pp. 39-40 (Inter partes review is an "efficient system for challenging patents that should not have issued."); *Cuozzo*, p. 16 ("in addition to helping resolve concrete patent-related disputes among parties, inter partes review helps protect the public's paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope.") (internal citations omitted).

As detailed in the previous section, the PTO knew from the beginning that the §314(a) "threshold" determination was required, and its fees were based on the estimated costs of making the §314(a) "threshold" determination for each challenged claim in the IPR petition. §314(a)'s "threshold" determination is deliberately lopsided in favor of institution by requiring little work by the PTO if a single reasonably likely challenge is found, whereas much work is required to perform §314(a)'s "threshold" determination if no reasonably likely challenge is found. If

the first challenge is found reasonably likely to prevail, the process can stop and the remaining portion of the non-refundable institution decision fee could be used to offset the cost of the IPR proceeding (whose refundable fee is less that the estimated PTO costs). Even if, after finding just one reasonably likely challenge (and not reviewing the rest), the Director denied the IPR petition on non-merit statutory grounds, such as a heavy PTO workload, the IPR petitioner still gets his money's worth from the single successful challenge because of the public notice of the "reasonable likelihood" finding, as discussed below. If no reasonably likely challenge is found, the IPR petitioner gets his money's worth from the §314(a)'s "threshold" determination being made on ***every*** challenged claim in the IPR petition.

An IPR petition functions as a public notice of a possible problem with the patent's validity.[48] Accordingly, the institution decision, which must include the claim-by-claim §314(a) "threshold" determination, is also made public.[49] The fact Congress wanted both to be made public "as soon as practicable" indicates the importance of notifying the public of (1) an allegation of invalidity; and (2) the PTO's initial or "threshold" determination regarding this invalidity allegation.

[48] §312(b): "(b) Public Availability.—As soon as practicable after the receipt of the petition under 311, the Director shall make the petition available to the public."

[49] §314(c): "(c) Notice.—The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as practicable."

Regardless of whether the IPR petition is granted or denied, either the presumption of validity stands (which can only happen if there is a claim-by-claim §314(a) "threshold" determination of ***every*** challenge) or the patent's validity is in question (if ***any*** single challenge was found reasonably likely to prevail).

### C. The PTO only has the discretion to consider ***PTO*** proceedings when denying an IPR petition

The PTO is limited to explicit statutory delegations of authority/discretion. As stated in *Loper Bright*, "The court fulfills [its] role by recognizing … delegations [and] 'fix[ing] the boundaries of [the] delegated authority.'"[50] In every instance, the IPR statute explicitly circumscribes the PTO's scope of discretion to ***within*** the IPR statute and/or ***within*** the PTO. Congress gave the Director rule-making authority on a long list of IPR subjects in §316(a), of which §§316(a)(2) and (a)(4) give the Director the broadest rule-making authority, while the remaining 11 provisions give the Director rule-making authority regarding the minutiae of an IPR trial (*e.g.,* §316(a)(6) grants authority to make rules on discovery sanctions; §316(a)(7) for rules on protective orders; §316(a)(8) for rules on the patent owner's response; *etc*.).

Under §316(a)(2), the Director can make rules "setting forth standards for the showing of sufficient grounds to institute a review ***under section §314(a)***" (emphasis

---

[50] *Loper Bright*, 630 U.S. at 395.

added). The Director's rule-making authority regarding the IPR institution standards is limited to the §314(a) "threshold" determination—specifically, the "standards for the showing of sufficient grounds." As written, this is a very limited power. Only *Thryv* can possibly explain how we have gotten so far beyond these words. Congress did not give the Director the authority to independently define his own grounds, as the Director has done in the 3/26/25 DD Memo.

Under §316(a)(4), the Director can make rules "establishing and governing [IPR] ***under this chapter*** and the relationship of such review to other proceedings ***under this title***" (emphasis added). This rule-making power is limited to where there is explicit statutory authority for the Director to exercise his authority and/or discretion. Congress allowed the PTO to make IPR rules under Chapter 31, *i.e.*, §§311-319, such as rules for joinder under §315(c), rules for one or more related PTO proceedings under §315(d), and rules for IPR-based estoppel under §315(e)(1). The PTO also has the power to make rules governing "the relationship" of IPR proceedings to other ***PTO*** proceedings (*i.e.*, proceedings under Title 35), such as rules under §325(d) for denying an IPR petition when "the same or substantially the same prior art or arguments previously were presented to the Office."

If Congress intended the Director to have the discretion to deny IPR petitions based on parallel court proceedings, why didn't Congress explicitly say so, like

Congress did in §325(d) regarding denying IPR petitions based on other PTO proceedings?

In §316(b), Congress gave the Director the discretion to consider "the efficient administration of the Office" and "the ability of the Office to timely complete" IPR proceedings when making any of the rules in §316(a). Thus, the PTO has the authority to make a rule for denying IPR petitions based on the PTO workload under §316(a)(4) and §316(b) or based on the PTO's inability to complete the IPR proceeding within a year, under §316(a)(11) and §316(b).

Congress knew full well that there'd be parallel PTO and court proceedings—in fact, one reason for IPRs was so that an accused infringer could challenge the asserted patent from the lawsuit.[51] Congress defined how parallel court proceedings would be handled in §§315(a) and (b), which the PTO only has the authority to ministerially apply to the situation. There is no indication in Chapter 31 or anywhere else in Title 35 of Congressional intent to give the Director the discretion to consider parallel court proceedings in any other manner regarding the IPR institution decision.

When interpreting a statute, "the ***contemporaneous*** construction of those who were called upon to act under the law, and were appointed to carry its provisions into

[51] H. R. Rep. No. 112-98, at 48 (2011).

effect, is entitled to very great respect."[52] When the PTO first enacted its rules and procedures for IPRs, the PTO knew and understood its limitations within the statutory framework, *e.g.*:

> … The Board institutes the trial on behalf of the Director. Proposed §42.4(a). In instituting the trial, the Board will consider whether or not a party has satisfied the statutory institution requirements. As part of its consideration, the Board may take into account the existence of another proceeding before the Board under 35 U.S.C. 315(d), as amended, and whether the same or substantially the same prior art or arguments were previously presented to the Office under 35 U.S.C. 325(d).[53]

In listing the problems with *Chevron*, the Court in *Loper Bright* noted that "[i]t demands that courts mechanically afford *binding* deference to agency interpretations, including those that have been inconsistent over time."[54] In the present case, the PTO has strayed from its original (and correct) interpretation of the limitations built into the IPR statute and now claims an authority "under §314(a)" to promulgate any rule or procedure for the Director to deny an IPR petition on any basis. Without *Chevron* deference, the PTO simply can't do that.

---

[52] *Loper Bright*, 603 U.S. at 386 (emphasis added) (internal citations omitted). Here, the Court was describing, with approval, the historical approach before *Chevron* deference.

[53] 77 Fed. Reg. 6868 (Feb. 9, 2012), at 6874 (discussing the first rules for IPRs).

[54] *Loper Bright*, 603 U.S. at 399 (emphasis in original).

### D. The 3/26/25 DD Memo creates new "DD" bifurcated procedure

The 3/26/25 DD Memo describes a new bifurcated procedure, under which (1) the Director may make his own "discretionary denial" (DD) of the IPR petition based on "discretionary considerations;" and (2) if the IPR petition survives the first part (*i.e.*, no DD), a 3-member PTAB panel decides whether to institute an IPR/PGR based on "[the] merits." The Director may grant a DD on any basis whatsoever, as the list of "discretionary considerations" is open-ended and limitless.[55] There is no mention of the statutorily required §314(a) "threshold" determination. Because this DD procedure was brand-new, the 3/26/25 DD Memo promulgated procedures for the patent owner to file a request/brief for a DD with the Director, the petitioner to file an opposition to the DD, a timetable for submitting the DD briefs to the Director, page limits, *etc*.[56] No attempt at rule-making and/or to amend the C.F.R. was made to reflect the new DD rules/procedures.

There is no panel or "Board" for the DD, the Director makes the decision alone, "in consultation with at least three PTAB judges,"[57] thus abrogating 37 CFR

---

[55] 3/25/25 DD Memo, pp. 2-3, Appx43-44 (the last consideration in the bulleted list is: "[a]ny other considerations bearing on the Director's discretion.").

[56] *Id*., p. 2, Appx43.

[57] 3/26/25 DD Memo, p. 1, Appx42.

§42.4 which delegates the IPR institution decision to the Board.[58] In reality, almost all DDs credit only one person with making the decision (the Director or his delegatee), with no indication anyone else was consulted. The 3/26/25 DD Memo is a permission slip for the Director to deny IPR petitions on whatever basis he wants.

### E. Tesla's IPR petitions "discretionarily denied" under the 3/26/25 DD Memo

In March of this year, Tesla filed the 4 IPR petitions at issue: IPR2025-00943 ("'943 IPR"); IPR2025-00944 ("'944 IPR"); IPR2025-01034 ("'1034 IPR"); and IPR2025-01035 ("'1035 IPR").[59] In each proceeding,[60] the patent owner filed a DD request in accordance with the 3/26/25 DD Memo.[61] Although addressed to "the Board," this was a mistake, as each DD request was sent to, and decided out of, the Director's office. Oppositions, replies, and sur-replies followed.[62]

---

[58] Footnote 2 of the *Motorola* decision credits the 10/17/25 DD Memo with making this change; however, this is incorrect.

[59] '943 IPR docket at Appx8-11; '944 IPR docket at Appx12-15; '1034 IPR docket at Appx16-19; and '1035 IPR docket at App20-23.

[60] DD briefing for the '943 IPR at Appx47-274; the '944 IPR at Appx275-497; the '1034 IPR at Appx498-738; and the '1035 IPR at Appx739-963.

[61] '943 IPR DD Brief/Req., Appx147-196.

[62] '943 IPR DD Opp., Appx197-247; DD Reply, Appx248-255; and Sur-Reply, Appx256-263.

The Deputy Director (under delegation from the Director) subsequently issued the 9/26/25 DD of the '943/'944 IPRs (Appx1-4) and the 10/10/25 DD of the '1034/'1035 IPRs (Appx5-7). To all appearances, the Deputy Director decided the 9/26/25 DD and 10/10/25 DD on her own without consulting anyone else.[63] Both DDs had the same reasoning, summed up in a paragraph: because (i) the FWD would "likely" issue before trial, and (ii) there's "insufficient evidence" the court would issue a stay if there's an IPR institution, granting the IPR petitions could result "in significant duplication of effort, additional expense for the parties, and a risk of inconsistent decisions."[64]

In accordance with the 3/26/25 DD Memo, neither the 9/26/25 DD nor the 10/10/25 DD considered, discussed, or made the required §314(a) "threshold" determination. In accordance with the 3/26/25 DD Memo, the 9/26/25 DD and the 10/10/25 DD were partially based on a comparison of the timeline for the IPR proceeding vs. a speculative timeline of a parallel court proceeding—a consideration Congress did not give the PTO the discretion to consider when making an IPR institution decision.

---

[63] 9/26/25 DD, p. 1, Appx1, and 10/10/25 DD, p. 1, Appx5, where the Deputy Director, as delegatee of the Director, made the DDs, and no other person is listed anywhere in the DDs as having any involvement.

[64] 9/26/25 DD, p. 2, Appx2.

## III. MANDAMUS SHOULD BE GRANTED

### A. Tesla has a "clear and undisputable right" to the vacatur of the 3/26/25 DD Memo for (i) not requiring §314(a)'s "threshold" determination and (ii) enabling denials based on ***non***-PTO considerations

Tesla has a "clear and indisputable right"[65] to an IPR institution decision ***based on*** the IPR statute. Tesla has a "clear and indisputable right" to the ***missing*** "threshold" determination under 35 U.S.C. §314(a). Tesla has a "clear and indisputable right" to the 4 IPR institution decisions for which Tesla paid $95,000 (*i.e.*, the claim-by-claim §314(a) "threshold" determination those fees paid for by statute). Generally speaking, the present petition is a request that this court, at the least, command the PTO to make the IPR institution decision as statutorily required—*i.e.*, (1) ***with*** the required §314(a) "threshold" determination; and (2) ***without*** considering non-statutory matters, such as the speculative timeline of a parallel court proceeding.[66] The simplest and systematically best way to achieve the goals of this petition would be to vacate the 3/26/25 DD Memo and require the PTO to promulgate new IPR institution guidelines/rules in accordance with statute.

---

[65] *Mylan*, 989 F.3d at 1378.

[66] It should be noted that Tesla made substantially the same arguments to the PTO in its IPR briefs as are presented herein. For example: Opp. to DD Req. in the '943 IPR, Appx197-246, at pp. Appx239-240 and Appx245. *In re DBC*, 545 F. 3d 1373, 1378 (Fed. Cir. 2008) ("It is well-established that a party generally may not challenge an agency decision on a basis that was not presented to the agency").

### B. The Federal Circuit's own precedential Catch-22 prevents Tesla from obtaining relief elsewhere.

This court has created a Catch-22 which guarantees that Tesla "lack[s] adequate alternative means to obtain [] relief."[67] In the *Motorola* decision, this court did not grant mandamus on an IPR institution denial because, *inter alia*, "an APA action in federal court affords Motorola an available avenue to raise this same challenge."[68] However, the IPR institution denials at issue here were made in accordance with the 3/26/25 DD Memo, which provides instructions for IPR institution decisions without making the required §314(a) "threshold" determination and based on non-statutory considerations. In *Apple v. Vidal*, this court held that "[i]f the congressional preclusion of review of the decision to institute is to be respected …, it must extend to the substance of such instructions"—*i.e.*, this court has ruled that §314(d)'s prohibition of judicial review extends to the "substance" of the 3/26/25 DD Memo.[69]

Thus, for example, if Tesla files an "APA action" pursuant to *Motorola* in the pending *Granite Vehicle* case[70] asserting the 3/26/25 DD Memo instructions should

---

[67] *Mallard*, 490 U.S. at 309.

[68] *In re Motorola*, __ F.4d at __ (slip op., p. 10).

[69] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 18).

[70] The related case *Granite Vehicle Ventures LLC v. Tesla, Inc.*, E.D.Tx. Dckt No. 24-cv-01007 (Dec. 6, 2024). Recent docket report at pp. Appx264-274.

be set aside under 5 U.S.C. §706(2), the Eastern District of Texas will refuse to review of the "substance" of the 3/26/25 DD Memo, pursuant to *Apple v. Vidal*. If the PTO is not doing its job by ***not*** making institution decisions in accordance with statute, no one and nothing else can make them do it—except the Federal Circuit by issuing this writ of mandamus.

### C. Mandamus is appropriate considering, *inter alia*, …

The third and final condition for granting a writ of mandamus is that the petitioner must "convince the court that the writ is appropriate under the circumstances."[71]

#### (1) … this court has recognized the need to re-visit the PTO's IPR regulations under the new *Loper Bright* lack of deference standard

Mandamus is appropriate because this court has already recognized the need to review the PTO's rule making authority under §316(a). In footnote 2 of *Softview*, this court stated (bolding added):

> To be sure, the PTO's authority under Section 316(a)(4) is not unbounded. … Section 316(a)(4) does not grant the PTO the authority to legislate new patent laws, but rather charges it with prescribing regulations governing IPR proceedings. ... We do not define the exact limits of this statutory provision today but narrowly determine that it authorized the PTO [here]. The **task of defining the bounds of section 316(a)(4) is for a later date and to be decided on a record with**

[71] *Mylan*, 989 F.3d at 1378.

> **briefing more dedicated to that issue** and in consideration of the Supreme Court's recent ruling in *Loper Bright Enters. v. Raimondo* ....[72]

As discussed above, §316(a)(4) is the PTO's authority to prescribe regulations for IPR generally, whereas §316(a)(2) is specifically directed to the §314(a) "threshold" determination. I respectfully submit the time for defining the bounds of §§316(a)(2) and (4) is now. This court should grant the writ of mandamus so that the parties may prepare and submit "briefing more dedicated to that issue."

**(2) …Tesla paid $95,000 in non-refundable fees for a claim-by-claim §314(a) "threshold" determination of 4 IPR petitions**

Mandamus is appropriate because Tesla paid $95,000 in non-refundable fees for the PTO to perform the §314(a) "threshold" determination for each claim challenged in each of its 4 IPR petitions.[73] Under statute (§311(a)) and as confirmed by the PTO when promulgating the 2025 IPR fees, the $23,750 non-refundable fee is for the PTO's "actual costs."[74] Because the fees Tesla paid are based on the costs of a claim-by-claim §314(a) "threshold" determination, mandamus is appropriate so that this court may command the PTO to perform the claim-by-claim §314(a) "threshold" determination, as paid for by Tesla and required by statute.

---

**72** *Softview v. Apple*, 108 F. 4th 1366 (Fed. Cir. 2024), slip op., p. 10, fn. 2.

73 Sect. I.B(1) and, *e.g.*, Tesla's Fee Payments, Appx24-27.

74 Sect. II.B.(1), and 89 Fed. Reg. at 91936.

## IV. PROPOSED/POSSIBLE ISSUES TO RESOLVE

### A. Is the judicial expansion of §314(d)'s shield to cover anything the PTO does regarding IPR institution decisions still supportable under the new *Loper Bright* lack of deference standard?

See Sect. II.A.

### B. Under *Loper Bright*, should §314(d)'s scope be limited to the §314(a) "threshold" determination, *a la* this court's *en banc Wi Fi One* decision (which was overturned under the old *Chevron* deference standard)?

See Sect. II.A.

### C. Is the PTO required to make a claim-by-claim §314(a) "threshold" determination regarding each IPR petition?

See Sect. II.B.

### D. Under *Loper Bright*, does the PTO have the statutory authority to make its own rules for denying IPR petitions based on ***non***-PTO proceedings?

See Sect. II.C.

### E. Considering (A)-(D), should the 3/26/25 DD Memo be set aside as "not in accordance with law" under §706(2)(A) and/or "in excess of statutory … authority" under §706(2)(C)?

See Sect. II.D.

# CONCLUSION

Through the harm of the IPR denials, Tesla has a colorable claim for relief under 5 U.S.C. §706 from the 3/26/25 DD Memo. Moreover, the metes and bounds of the PTO's authority under 35 U.S.C. §§316(a)(2)/(4) to promulgate regulations for IPR institution decisions need to be defined for the patentees, the petitioners, the patent bar, and, most of all, for the PTO itself.

Respectfully submitted,

December 31, 2025

By: */s/ Teodor Holmberg*

Teodor J. Holmberg
tidge@computer.org
8 Gregory Lane
Florence, MA 01062
(401) 225-4538

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-116

**Short Case Caption:** In re Tesla, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,992 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.
- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 12/31/25

Signature: /s/ Teodor Holmberg

Name: Teodor Holmberg